# Constitutionality of Seizing the Passports of Individuals Found to be Importing Controlled Substances Into the United States

A Customs Service directive to seize as evidence of a federal crime the passports of individuals found to be importing controlled substances into the United States would not implicate the Fourth or Fifth Amendments to the United States Constitution, nor give rise to any valid constitutional claims of denial of due process or deprivation of freedom to travel.

March 15, 1988

MEMORANDUM OPINION FOR THE ATTORNEY GENERAL

This memorandum evaluates the legality of the proposal by the United States Customs Service to seize the United States passports of individuals found to be in possession of illegal drugs upon entering the United States. In our view, the proposal involves nothing more than the lawful seizure of evidence of crime and raises no novel or substantial questions under the Fourth or Fifth Amendments. Indeed, according to the Customs Service, current practice is to seize passports in a large number of serious crimes. The current proposal would simply extend that practice to all cases involving the importation of any quantity of illegal drugs. There has been some confusion in the press accounts describing the Customs proposal and, therefore, we begin with a brief description of the plan.

## I. Background

Under the Customs Service directive, beginning March 15, 1988, Customs Service officials are to seize an individual's U.S. passport "as criminal evidence" and all "other evidentiary material" whenever "a person is found to be in violation of federal, state, or local criminal laws regarding the importation and/or possession of controlled substances." Memorandum to All Regional Commissioners, District Directors, Inspection and Control Stations, Regional and District Counsels, Special Agents in Charge, from Commissioner of Customs, *Re: Seizure of Controlled Substance Violator Passports for Evidence* at 1 (Mar. 8, 1988) ("Customs Directive"). The individual will be given a custody receipt for retained or seized property such as the passport and other personal items being held as evidence. According to officials from the State Department, an individual whose passport is seized and held as evidence of importation of illegal drugs may apply for, and, at least absent a risk to national security, be granted, a new passport.[1]

---

[1] Meeting with Mary V. Mochary, Deputy Legal Advisor, United States Department of State (Mar 14, 1988).

The local Customs Duty Agent will then be notified of the violation, and make a determination whether the violator should be arrested or released. In addition, the Customs Duty Agent is directed to "attempt to obtain federal prosecution of the violator" under 21 U.S.C. § 844 (possession of a controlled substance) and 21 U.S.C. § 952 (importation of a controlled substance), or, if federal prosecution is declined, to "attempt to obtain state or local prosecution for violations of any applicable state laws concerning controlled substances." Customs Directive at 2. If federal, state, or local prosecution is accepted, the Customs Duty Agent is directed to initiate a chain of custody and transfer the passport and evidence to the appropriate officials for use in prosecution. In addition, "[t]he chain of custody must state that once the passport is no longer required as criminal evidence, the ... officer having possession must send it *directly* to the Department of State." *Id.* If federal, state, and local prosecution is declined, the Customs Service is to forward seized passports to the Department of State for disposition and notify the violator of the address to which he may direct inquiries concerning his passport.

## II. Discussion

As described in the Customs Directive, the plan to seize the passports of those engaged in the importation of controlled substances into the United States appears to involve nothing more than the lawful seizure of evidence of a crime pursuant to a lawful search. It has long been established that "routine searches of persons and things may be made upon their entry into the country without first obtaining a search warrant and without establishing probable cause or any suspicion at all in the individual case." 1 Wayne R. LaFave & Jerold H. Israel, *Criminal Procedure* § 3.9, at 326 (1984) (footnote omitted). According to the Supreme Court, "searches made at the border, pursuant to the long-standing right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasonable simply by virtue of the fact that they occur at the border." *United States v. Ramsey*, 431 U.S. 606, 616 (1977).

Assuming a lawful border search, customs officials are entitled to seize all evidence of a crime for use in subsequent prosecution. In *Warden v. Hayden*, 387 U.S. 294 (1967), the Supreme Court abandoned any distinction between seizure of "'mere evidence'" and seizure of "fruits, instrumentalities or contraband" for purposes of the Fourth Amendment, and held that evidence could be seized so long as there is "a nexus—automatically provided in the case of fruits, instrumentalities or contraband—between the item to be seized and criminal behavior." *Id.* at 307.

The passport of an individual found to be in possession of a controlled substance upon entering the United States is clearly subject to lawful seizure. Under federal law, it is a felony "to import into the United States from any place outside thereof, any controlled substance . . . or any narcotic drug." 21 U.S.C. § 952(a). As recently stated by the Fourth Circuit, "[a] critical element of the offense is that the defendant import the substance or cause it to be imported." *United*

*States v. Samad*, 754 F.2d 1091, 1096 (4th Cir. 1984). Under federal law, the only means by which an American can lawfully enter or leave the country—absent a presidentially granted exception—is with a passport. *See* 8 U.S.C. § 1185(b). Thus, even assuming that an individual's passport is not itself an instrumentality of the crime of importing drugs, it certainly constitutes evidence with a nexus to the crime of importation of drugs. The passport is evidence of the individual's identification, destination, and normally his place of origin. Since the offense of importation requires the prosecution to prove that the defendant imported drugs (1) into the United States, and (2) from a place outside of the United States, there is certainly a nexus between the defendant's passport and criminal behavior. *See Warden v. Hayden*, 387 U.S. at 307.

Of course, an individual whose passport has been seized as evidence in these circumstances may be entitled to its return following conviction, acquittal, or a decision not to prosecute.[2] *See Warden v. Hayden*, 387 U.S. at 307–08. But the mere fact that properly seized evidence may be subject to return does not in any way affect the legality of the initial seizure. *Id.* at 307–10. Under the Customs Directive, when they are of no further evidentiary use, passports seized as evidence of importation of controlled substances are to be forwarded to the Department of State with appropriate notification to the individual to whom the passport was issued. The State Department may hold the passport pending a request for its return or determine immediately whether there are adequate grounds under applicable regulations for revoking the passport.[3] There is no valid constitutional objection to this scheme. First, post-deprivation process is necessarily adequate when a passport is seized lawfully as evidence of crime. *See Warden v. Hayden*, 387 U.S. at 307–08; *cf. Haig v. Agee*, 453 U.S. 280, 309–10 (1981) (post-revocation notice and hearing is constitutionally sufficient when passport revoked on the ground that "there is a substantial likelihood of 'serious damage' to national security or foreign policy as a result of a passport holder's activities in foreign countries").

---

[2] In addition, an individual may seek return of his passport *prior* to trial pursuant to Federal Rule of Criminal Procedure 41(e) That rule provides.

> A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property on the ground that he is entitled to lawful possession of the property which was illegally seized. The judge shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted the property shall be restored and it shall not be admissible in evidence at any hearing or trial. If a motion for return of property is made or comes on for hearing in the district of trial after an indictment or information is filed, it shall be treated also as a motion to suppress under Rule 12

Thus, the denial of a motion for the return of seized property under Rule 41(e) is in effect a finding that the search and seizure were lawful, and therefore an individual whose passport has been seized would have no independent legal objection to retention of his passport for use as evidence.

[3] At a meeting on March 14, 1988, Mary V. Mochary, Deputy Legal Advisor, United States Department of State, informed this Office that the State Department does not intend to revoke passports it receives from the Customs Service pursuant to the Customs Directive. According to Ms. Mochary, the State Department's practice has been to hold passports used as evidence until the persons to whom they were issued request their return or until the passports expire. Ms. Mochary stated that few, if any, individuals have requested return of a seized passport, preferring simply to apply for and be issued a new one.

61

Further, there would be no unconstitutional infringement of the citizen's freedom to travel abroad. In the first place, the freedom to travel apparently will not be infringed at all since, as noted below, the State Department will issue a *new* passport even to a person whose passport has been seized as evidence in a drug trafficking or other criminal prosecution. In light of the availability of a replacement passport, there is no plausible argument that a temporary deprivation of one's passport meaningfully restricts the liberty to travel abroad.

In any event, the Supreme Court has recognized repeatedly that this freedom "is subject to reasonable governmental regulation," and that "the *freedom* to travel outside the United States must be distinguished from the *right* to travel within the United States." *Haig v. Agee*, 453 U.S. at 306. For this proposition, the *Agee* Court relied on *Califano v. Aznavorian*, 439 U.S. 170 (1978), in which the Court explained:

> The constitutional right of interstate travel is virtually unqualified. By contrast the 'right' of international travel has been considered to be no more than an aspect of the 'liberty' protected by the Due Process Clause of the Fifth Amendment. As such this 'right,' the Court has held, can be regulated within the bounds of due process.

*Id.* at 176 (citations omitted) (quoting *Califano v. Torres*, 435 U.S. 1, 4 n.6 (1978)). For the reasons already stated, the seizure and retention of a passport as evidence of criminal activity is consistent with due process. Whether the Secretary of State's potential, future revocation of the passport would be reasonable and comply with due process will depend on the facts and circumstances surrounding that action, *see generally Haig v. Agee*, and would not bear upon the legality of the actions to be taken pursuant to the Customs Directive.[4] Thus, even if replacement passports were not provided, there would be no constitutional impediment to seizing passports in this manner.

## Conclusion

The Customs Directive to seize as evidence the passports of individuals found to be importing controlled substances into the United States raises no novel or substantial constitutional questions. Supreme Court precedent clearly establishes

---

[4] Under the State Department's current regulations, a passport may be revoked if "[t]he Secretary determines that the national's activities abroad are causing or are likely to cause serious damage to the national security or the foreign policy of the United States." *See* 22 C.F.R. §§ 51.71(a), 51.70(b)(4). Any action taken by the Secretary that adversely affects the ability of a person to receive or use a passport is subject to the provisions of 22 C.F.R. §§ 51.80 - 51.89, which provide for notice and hearing.

Of course, after a passport is no longer of any evidentiary use but prior to any determination by the Secretary, an individual may seek return of a passport (as in the case of all evidence) by initiating a "'possessory action to reclaim that which is wrongfully withheld.'" *Warden v Hayden*, 387 U.S. at 308 (quoting *Land v Dollar*, 330 U.S. 731, 738 (1947)).

that the passport of an individual found to be importing drugs may be seized as the instrumentality or evidence of a federal crime. Nor does the proposal give rise to a valid due process objection or an objection based on the freedom of international travel.

CHARLES J. COOPER
*Assistant Attorney General*
*Office of Legal Counsel*